# MODIFICATION AGREEMENT

Borrower ("I"):[1] HAE KYUNG LEE and SEOK KI LEE
Lender or Servicer ("Lender"): JPMORGAN CHASE BANK, N.A.
Date of mortgage, deed of trust, or security deed ("Mortgage") and Note or Line of Credit Agreement ("Note"): 10/5/2005
Loan Number: 419401550385
Property Address ("Property"): 2411 CARLMONT DR UNIT#110, Belmont, CA 94002
Modification Effective Date: 11/1/2015
Original Mortgage Amount: $250,000.00

NOTICE TO CONSUMER: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY.

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

    A. The Property has not been condemned;

    B. There has been no change in the ownership of the Property since I signed the Loan Documents.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. TIME IS OF THE ESSENCE under this Agreement. This means I must make all payments on or before the days that they are due;

    B. If the Lender determines that an of my representations in Section 1 are not true and

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

correct as of the Modification Effective Date identified in Section 3, the Loan Documents will not be modified and this Agreement will terminate, or if the Loan Documents have already been modified, this Agreement will be rescinded and the Loan will revert back to the original terms of the Loan Documents. In either event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement or any other requirements of the Program.

D. I understand and agree that if I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, I am voluntarily entering into this modification for the benefits to be obtained thereby and not as a reaffirmation of the debt evidenced by the Note, and I further understand and agree, and the Lender, by its execution of this Agreement also agrees, that nothing contained herein is intended to impose personal liability for the Loan in violation of such discharge.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 11/1/2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout, this modification will not take effect. The first modified payment will be due on 11/1/2015.

   A. The Maturity Date will be: **10/1/2055**.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement. The new principal balance of my Note will be **$247,265.37** (the "New Principal Balance").

   C. Interest at the rate of **3%** will begin to accrue on the New Principal Balance as of **10/1/2015** ("Interest Rate Effective Date"). Beginning on the **10/1/2020** anniversary date of the Interest Rate Effective Date, the interest rate will adjust by 1% each year until the rate of **3.875%** is reached.

   I will begin to make modified monthly payments on **11/1/2015** and on the same day of each month thereafter (the "Amortizing Payment Date"). Beginning on the Amortizing Payment Date, I will begin to make monthly payments in an amount necessary to repay the unpaid balance of the New Principal Balance in substantially equal monthly installments of principal and interest at the interest rate then in effect over the remaining term of the Loan. With each scheduled interest rate adjustment after the Amortizing Payment date, my monthly payment will be further adjusted to an amount necessary to repay the remaining unpaid balance of the New Principal Balance as of the interest rate adjustment date in substantially equal monthly installments of principal and interest over the remaining term of the Loan. I understand that the Lender will provide me with notice

of my new interest rate and payment amount prior to the due date of any such new payment.

The estimated payment schedule for the modified Loan will be as follows:

| Years | Interest Rate | Interest Rate Change Date | Estimated Monthly Payment Amount | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|
| 1-5 | 3.00% | 10/1/2015 | $885.17 | 11/1/2015 | 60 |
| 6-Maturity | 3.875% | 10/1/2020 | $1,001.23 | 11/1/2020 | 420 |

Monthly payment amounts are estimated because this is a daily simple interest loan. Interest will accrue daily and payments will be applied as of the date received by the Lender according to the terms of the Loan Documents. Interest accrues by applying the ratio of the annual interest rate over the number of days in the year (365 or 366 in a leap year), multiplied by the principal balance, multiplied by the actual number of days the principal balance is outstanding. All payment amounts specified in this Agreement assume that all payments will be made on the payment due date throughout the life of the loan. If I pay before or after the payment due date, the amount of interest and principal will vary. For example, if I pay a monthly amortizing payment after the due date, more of the payment will go toward interest and less toward principal. As a result, the principal may be reduced more slowly over the term of the loan, and I could still owe principal at the maturity date of the loan. All accrued and unpaid interest will be applied before any amounts are applied toward principal. Notwithstanding any scheduled payment shown in this Agreement, at any scheduled interest rate adjustment date, my monthly payment will be adjusted to an amount necessary to repay the remaining unpaid balance as of the interest rate adjustment date in substantially equal monthly installments of principal and interest over the remaining term of the loan, assuming I pay on the due date. Lender will not accept multiple monthly payments in advance of their due date.

The parties agree that the New Principal Balance stated in Section 3.B. excludes a portion of the unpaid principal balance, equaling $0.00 ("Deferred UPB"). The Deferred UPB shall be deferred until the earlier of the Maturity Date, prepayment of the Note, or default under the terms of the Loan Documents or this Agreement. No payments toward the Deferred UPB are required before, unless or until such an event, and no interest shall accrue on the Deferred UPB.

Notwithstanding the foregoing, I agree that unless sooner paid, all principal, interest and other amounts due under the Loan Documents shall be paid on the new Maturity Date. The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance or workout plan that I previously entered into with Lender for my Mortgage.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

G. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

H. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or

partial prepayment of the Note, such provision is null and void.

I. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

J. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

K. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

L. That Lender may collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender to any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my mortgage loan.

M. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4. M shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N. If I receive a separate notice from Lender that I am required to attend additional debt management counseling, I agree to promptly attend such counseling and provide evidence of attendance to Lender upon request.

O. If this Agreement includes an extension of the maturity date for my loan and the Property is located in a Special Flood Hazard Area ("SFHA"), as part of this payment extension

process, I understand that the Lender is required by law to send me another flood notice confirming the Property's flood status. Lender is required to do so even though it periodically checks to ensure that I have flood insurance. As a result, if I receive this additional notice from Lender, I agree to immediately sign the Flood Notice Acknowledgment, as required, and return it to Lender.   I also acknowledge that I am responsible for continuing any insurance coverage on the Property beyond the original maturity date of my loan.

P. If my loan is a home equity line of credit ("HELOC"), I understand that (i) access to funds in the line of credit has been permanently closed, so I am not able to obtain any further advances, notwithstanding any references in the Loan Documents, or otherwise, to the Loan being a line of credit; (ii) any devices used for accessing the credit line, such as checks or credit cards, are void; (iii) if I have had separate balances on the HELOC that were charged interest at different interest rates, including fixed or variable rates, all balances are combined into a single balance that will be charged interest at the rate established in Section 3 of this Agreement, and I will not have the option of locking in or electing different interest rates or other payment terms in the future; (iv) if I have had the option to pay interest-only payments on any balances, all payments under this Agreement will be as set forth in Section 3 of this Agreement; and (v) if I have had special incentive interest rates involving a reduction in my interest rate for automatic payments or other relationships with the Lender, these special incentives no longer apply.

In Witness Whereof, the Lender and I have executed this Agreement.

Loan Number 419401550385

## TO BE SIGNED BY BORROWER ONLY

Prior to signing this Agreement, each signer has read and understood all of the provisions of this Agreement. Each of the signers agrees to the terms of this Agreement and acknowledges receipt of a completed copy of this Agreement.

Borrower signature page to Modification Agreement between **JPMORGAN CHASE BANK, N.A.** and **HAE KYUNG LEE AND SEOK KI LEE**, Loan Number **419401550385** with a modification date of **November 1, 2015.**

In Witness Whereof, the Borrower(s) have executed this Agreement.

_____[signature]_____     Date: 11/23/15
Borrower – HAE KYUNG LEE

_____[signature]_____     Date: 11/23/15
Borrower – SEOK KI LEE

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California
COUNTY OF San Mateo

On 11-23-15 before me, Gopal C Patel, Notary Public, personally appeared HAE KYUNG LEE AND SEOK KI LEE,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____[signature]_____
Notary Public Signature

[Notary Seal: GOPAL C. PATEL, Comm. # 2057760, NOTARY PUBLIC-CALIFORNIA, SAN MATEO COUNTY, My Comm. Exp. June 7, 2018]

Notary Public Seal

## TO BE SIGNED BY LENDER ONLY

Lender signature page to modification agreement between JPMORGAN CHASE BANK, N.A. and **HAE KYUNG LEE AND SEOK KI LEE**, Loan Number **419401550385** with a modification date of **November 1, 2015.**

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMorgan Chase Bank, NA**

By: _[signature]_

Printed Name:    Dianne Price, Authorized Signer

Date:    12-1-15

STATE OF _Texas_                    COUNTY OF _Denton_

This instrument was acknowledged before me on the 1 day of _December_, 20 15, by _____Dianne Price, Authorized Signer_____ of JPMorgan Chase Bank, N.A., a national banking association, on behalf of said association.

[SEAL]

Notary Public - State of _Texas_

My Commission Expires

_Dana G. Richard_
Printed Name of Notary

DANA G RICHARD
My Commission Expires
February 12, 2017

**IMPORTANT DISCLOSURES REGARDING YOUR MODIFICATION OFFER**

Chase wants to congratulate you on qualifying for the pre-approved loan modification offer that accompanies this notice. Please review the offer materials carefully. If you decide to accept the offer, the terms of your modified Loan will have the following changes effective with your first modified payment due on 11/1/2015.

| Prior Principal and Interest: $1246.99* | New Principal and Interest: $885.17* |
|---|---|
| Prior Interest Rate: 0.00% | New Interest Rate: 3.00% |
| Prior ARM Index: 0.95% | New ARM Index: NOT APPLICABLE |

*This amount does not include monthly escrow payments for taxes, insurance or similar items.

Assuming you make your current minimum payments on time, your loan balance as of the 10/1/2020 interest rate change date is anticipated to be $230,004.26. Please reference the final modification agreement enclosed as a part of the offer materials for complete terms and conditions of your modified loan. The new terms stated above will only go into effect if you accept the offer within the time required.

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

## TO BE SIGNED BY BORROWER ONLY

Borrower signature page to modification agreement between JPMORGAN CHASE BANK, N.A. and HAE KYUNG LEE AND SEOK KI LEE, Loan Number 419401550385 with a modification date of 11/1/2015.

In Witness Whereof, the Borrower(s) have executed this agreement.

_____    Date: 11/23/15
Borrower – HAE KYUNG LEE

_____    Date: 11/23/15
Borrower – SEOK KI LEE

*please See attached iA Ack.
11-23 2015.

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of __San Mateo__

On __11-23-2015__ before me, __GOPAL C PATEL__, Notary Public,
(Here insert name and title of the officer)

personally appeared __HAE KYUNG LEE AND SEOK KI LEE__,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature of Notary Public

(Notary Seal)

GOPAL C. PATEL
COMM. # 2067780
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
My Comm. Exp. JUNE 7, 2018

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

__Modification Agreement__
(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages __7__ Document Date __11/23/15__

(Additional information)

### INSTRUCTIONS FOR COMPLETING THIS FORM

Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they,- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

### CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer
  _____
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____



Lender: JPMorgan Chase Bank, N A
C/O Chase Fulfillment Services
710 South Ash Street, Suite 200
Glendale, CO 80246

Date: September 28, 2015
Loan Number: 419401550385

Borrower(s): Hae Kyung Lee
Seok Ki Lee

Property Address: 2411 Carlmont Dr.
Unit #110
Belmont, CA 94002

## Notice of Special Flood Hazards and
## Availability of Federal Disaster Relief Assistance
## "Notice for Participating Communities"

We are giving you this notice to inform you that:

- The building(s) or mobile home(s) securing the loan for which you have applied or for which you have requested an extension, increase or renewal is or will be located in an area with high flood risks, which is referred to as a Special Flood Hazard Area (SFHA).

- The area has been identified by the Federal Emergency Management Agency (FEMA) as an SFHA using the Flood Insurance Rate Map (FIRM) or the Flood Hazard Boundary Map (FHBM) for the following community number: «FLD_Community_Nmbr». The SFHA in which your building or mobile home is or will be located has at least a one percent (1%) chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year. During the life of a 30-year mortgage loan, the risk of a 100-year flood in an SFHA is 26 percent (26%).

- Federal law allows a lender and borrower jointly to request the Administrator of FEMA to review the determination of whether the property securing the loan is located in an SFHA. If you would like to make a request, please contact us for further information. You may also call a FEMA mapping specialist at 1-877-336-2627 to discuss your concerns.

- The community in which the property is located participates in the National Flood Insurance Program (NFIP). Federal law will not allow us to make you the loan that you have applied for if you (or your homeowners association or cooperative corporation) do not purchase flood insurance. The flood insurance must be maintained for the life of the loan. If you or your homeowners association fail to purchase or renew flood insurance on the property, Federal law authorizes and requires us to purchase the flood insurance at your expense.

    - Unless we tell you otherwise, you're not required to maintain flood insurance on a structure that is detached from the primary residential structure and does not serve as a residence (e.g., a tool shed or boathouse). For detached structures, please consider the following important information the Federal Government has asked us to provide to you: *Although you may not be required to maintain flood insurance on all structures, you may still wish to do so, and your mortgage lender may still require you to do so to protect the collateral securing the mortgage. If you choose to not maintain flood insurance on a structure, and it floods, you are responsible for all flood losses relating to that structure.*

- Flood insurance coverage under the NFIP may be purchased through an insurance agent who will obtain the policy either directly through the NFIP or through an insurance company that participates in the NFIP. Flood insurance that provides the same level of coverage as an NFIP policy also may be available from private insurers that are not federally backed. We encourage you to compare the flood insurance coverage, deductibles, exclusions, conditions, and premiums of an NFIP and a private insurance policy and to direct inquiries to your agent. If you or your homeowners association or cooperative corporation have a private flood insurance policy, we will review it for acceptability and advise you of our findings.

- For single family dwellings, and 1 to 4 unit condominiums or townhouses, the minimum amount of flood insurance required is the lesser of:
    - One hundred percent (100%) of the full insurable value of the dwelling and insurable improvements (usually the replacement cost value), or
    - The outstanding principal balance of the first lien loan, plus (a) the unpaid principal balance of any other loan secured by the same property and (b) the total credit amount of any line of credit secured by the same property, or
    - The maximum amount of flood insurance available through NFIP (currently $250,000)

However, the minimum amount of flood insurance required for a condominium with more than 4 units is different. For these condominiums, the condominium is required to have a master flood insurance policy covering the entire building (that will provide coverage on your residential condominium unit) equal to the lesser of

Case: 15-30180   Doc# 74-1   Filed: 08/05/16   Entered: 08/05/16 16:18:22   Page 12 of 13

- The full replacement cost value of the building, divided by the number of units in the building; or
- The maximum amount of insurance available per unit under NFIP (currently $250,000).

The minimum coverage requirements may be different for other property types.

- For cooperative apartment buildings, flood insurance is not available from the NFIP for individual apartment owners. In order for your loan to close, the building and improvements must be insured by the cooperative corporation or association for flood loss under the NFIP General Property Form or an acceptable private insurance policy for the maximum amount available (currently $250,000 for a 1 to 4 family building and $500,000 if the building is for 5 or more families).

- Flood insurance coverage under the NFIP is limited to the overall value of the property securing the loan minus the value of the land on which the property is located.

- Federal disaster relief assistance (usually in the form of a low-interest loan) may be available for damages incurred in excess of your flood insurance if your community's participation in the NFIP is in accordance with NFIP requirements. If you are planning to build a structure or make repairs, contact the local community's chief executive official to determine building standards for structures within an SFHA.

### Acknowledgment

(Please acknowledge receipt of this notice by signing below and returning a copy of the signed notice to Lender at the above address)

I/we agree to furnish at my/our expense, a flood insurance policy or the declarations page from the policy satisfying Lender's requirements on or before closing of the above-referenced loan. Lender may also accept other forms of proof of insurance at its discretion. I/we agree to maintain flood insurance in the amount that Lender requires.

| _[signature]_ | 11/23/15 |
|---|---|
| Signature | Date |

| _[signature]_ | 11/23/15 |
|---|---|
| Signature | Date |

| | |
|---|---|
| Signature | Date |

Notice of Special Flood Hazard – Participating Community
C6099P (4/14) (Replaces 10/12)
Page 2 of 2

Case: 15-30180   Doc# 74-1   Filed: 08/05/16   Entered: 08/05/16 16:18:22   Page 13 of 13